IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK A. HERNANDEZ,

    Plaintiff,                        No. CIV S-06-1251 GEB DAD P

    vs.

VUONG M. DUC, et al.,             FINDINGS AND RECOMMENDATIONS

    Defendants.

                            /

         Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On October 2, 2006, defendants Vuong M. Duc, M.D. and Andrew Nangalama, M.D. filed a motion to dismiss the complaint pursuant to unenumerated Rule 12(b) of the Federal Rules of Civil Procedure on the ground that plaintiff failed to exhaust available administrative remedies prior to bringing this action.[1]  Plaintiff has filed a timely opposition.  Defendants have not filed a reply.

/////

---

[1] Defendant Dr. Robert H. Allen is represented by separate counsel and has not joined in the motion to dismiss pending before the court. The court has ordered service of plaintiff's complaint on defendant E. Trent. However, defendant Trent has not been served because he has not been located. On May 1, 2007, the court ordered plaintiff to provide additional information so that service on defendant Trent can be accomplished.

1

**PLAINTIFF'S CLAIMS**

Plaintiff's complaint alleges that in April of 2005 he fractured his right ring finger while playing basketball. (Compl. at 2.) Plaintiff alleges that, although defendants have been aware of plaintiff's injury, they have been deliberately indifferent to his medical needs and have failed to provide him with adequate medical care. (Compl. at 3.) Plaintiff further alleges that as a result he has suffered severe pain and his finger has healed in a deformed way. (Compl. at 3.) Plaintiff claims that neither a splint nor a cast have been able to repair his finger or relieve his pain. Plaintiff seeks an order, directing prison officials to arrange for surgical correction of his broken finger. (Compl. at 3.) Plaintiff also seeks compensatory damages, costs of the suit, and all other relief the court deems proper and just. (Compl. at 3.)

**DEFENDANTS' MOTION TO DISMISS**

I. <u>Defendants' Motion</u>

Defendants argue that plaintiff did not exhaust his administrative remedies regarding his claim of inadequate medical care with respect to his fractured finger. Specifically, defendants argue that plaintiff did not pursue his prison grievance through to the highest level of review by failing to submit a director level appeal before filing this lawsuit. (Defs.' Mot. to Dismiss at 5.) Defendants have attached to their motion supporting declarations by Irish O'Brian, an Appeals Coordinator at CSP-Sacramento and L. Zamora, Staff Services Manager II at the Inmate Appeals Branch of the California Department of Corrections and Rehabilitation.

Defendants assert that on or about March 1, 2006, the Appeals Office received plaintiff's first formal level appeal regarding treatment of his fractured finger, assigned it log number SAC-H-06-0522, and granted it in part. (Defs.' Mot. to Dismiss at 6; O'Brian Decl. at 2-3.) They contend that on or about May 12, 2006, the Appeals Office received plaintiff's second formal level appeal and again granted it in part. (Defs.' Mot. to Dismiss at 6; O'Brian Decl. at 3-4.) Finally, defendants assert that plaintiff did file a director's level appeal but that it was not

/////

submitted until on or about July 3, 2006, one month after plaintiff filed the complaint in this action.[2]  (Defs.' Mot. to Dismiss at 7; Zamora Decl. at 2-3.)

   Based upon these circumstances, defendants conclude that the court should dismiss plaintiff's complaint because he failed to exhaust administrative remedies prior to filing this action.

II. Plaintiff's Opposition

   Plaintiff claims that the exhaustion requirement is inapplicable in the present case and that the court should deny defendants' motion to dismiss.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3.)  Plaintiff acknowledges that in Booth v. Churner the United States Supreme Court held that prisoners must exhaust all available administrative remedies before filing suit.  However, plaintiff emphasizes that the Supreme Court created an exception to the exhaustion requirement where, as here, there are no remedies "available" because the administrative grievance system can provide no relief responsive to plaintiff's complaint.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3.)  In this regard, plaintiff cites the decisions in Brown v. Valoff, 422 F.3d 926 (9th Cir. 2004), Brady v. Attygala, 196 F. Supp. 2d 1016 (C.D. Cal. 2002), and Gomez v. Winslow, 177 F. Supp. 2d 977 (N.D. Cal. 2001), noting that in those cases, the courts held that inmates were not required to appeal a favorable grievance decision before filing suit.  Plaintiff contends that he too received a favorable decision in response to his grievances and had received all of the relief that he could reasonably expect from the grievance process once the Appeals Office granted his first formal level appeal.  He maintains that he was left with "nothing to exhaust."  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 4.)  Plaintiff argues that because the prison grievance process provided him with no further available remedies, and because his appeal was

/////

---

[2] According to defendants, the decision on plaintiff's director's level appeal was issued on September 13, 2006, almost three months after plaintiff filed this lawsuit.  (Defs.' Mot. to Dismiss at 7; Zamora Decl. at 2-3.)

granted at the first and second formal levels of review, the exhaustion requirement is inapplicable to his case.

III. <u>Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)</u>

By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

The Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). The Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. <u>Id.</u> at 741 n.6. Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. <u>Woodford v. Ngo</u>, __ U.S. __, 126 S. Ct. 2378, 2382 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal levels of review. <u>See</u> Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available before filing suit. <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005); <u>Bennett v. King</u>, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion.  Jones v. Bock, __U.S.__, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d at 1117-19.  The defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt, 315 F.3d at 1119.  "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Id.  "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary judgment–then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."[3]  Id. at 1120 n.14.  When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120.  See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied ___U.S.___, 127 S. Ct. 1212 (2007).  On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad."  Jones, 127 S. Ct. at 924.

IV.  Discussion

The Prison Litigation Reform Act requires a prisoner to exhaust his administrative remedies as long as the administrative authorities can take some action in response to the complaint.  See Booth v. Churner, 532 U.S. 731, 733-34 (2001); see also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'").

In Booth, the plaintiff claimed that correction officers violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force against him.  Booth sought injunctive relief, including transfer to another prison, and monetary relief.

---

[3] Plaintiff was notified of the requirements for opposing a motion to dismiss brought pursuant to non-enumerated Rule 12(b) on July 7, 2006.  (Order filed July 7, 2006 at 3-4).

5

Booth acknowledged that the prison's grievance process could address his excessive force complaints, but he maintained that it could not provide the monetary relief he requested. Id. at 734. The Court first noted that the PLRA states "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." Id. at 736. The Court explained that administrative remedies are not available if the relevant administrative officials lack the authority to provide any relief or to take any action in response to a prisoner's complaint. However, the Court rejected Booth's argument that administrative remedies are not available if the administrative officials have the authority to take some action in response to the complaint but not the action the prisoner demands. The Court explained that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues" and "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." Booth, 532 U.S. at 739 & 741 n.6. The Court noted that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. at 741 n.6.

        In the present case, plaintiff filed his complaint in this court on June 7, 2006, almost one month after he filed his director's level appeal with respect to his prison grievance. Under the PLRA exhaustion requirement, plaintiff was required to appeal his grievance to the director's level before he filed this lawsuit. As plaintiff recognizes in his opposition to the pending motion, whether administrative remedies are "available" hinges on whether the relevant prison officials have the authority to take some action, despite the fact that they are unable to provide an inmate with the form of relief he requests. Booth, 532 U.S. at 741. As in Booth, in this case prison officials at the director's level had the authority to take some action in response to plaintiff's complaint of inadequate medical care. In fact, on September 13, 2006, prison officials at the director's level did just that by denying plaintiff's appeal on the grounds that his claim that he was ignored and did not receive treatment for his fractured finger was refuted by documents demonstrating that he had received extensive medical treatment. Notably, the denial

of plaintiff's appeal was on substantive grounds and not because prison officials lacked authority to take some action.

Plaintiff's argument that because he had received all of the relief that he could reasonably expect from the prison grievance process he was not required to exhaust his administrative appeal, is unpersuasive. Plaintiff's own actions contradict his claim. For example, plaintiff now claims that he was satisfied with the partial grant of his first formal level appeal. Yet, he appealed that decision to the second formal level of review claiming "I am dissatisfied with the first level of reviewer's decision because the medical staff here at this prison have not provided medical treatment in regards to my broken right ring finger." ( Mot. to Dismiss, Decl. of L. Zamora, Ex. B at 8 of 11.) Similarly, after plaintiff received a partial grant of his appeal at the second formal level of review, he appealed that decision to the director's level, requesting further treatment for his serious medical condition as well as compensation. (Id., Ex. C.)

Plaintiff's reliance on the decision in Brown v. Valoff, 422 F.3d 926 (9th Cir. 2005) is misplaced. In Brown, a prisoner brought a civil rights action pursuant to 42 U.S.C. § 1983, alleging that a correctional officer used tear gas and assaulted him in violation of the Eighth Amendment and the Fourteenth Amendment. Id. at 930. Brown filed a grievance at the first and second formal levels of review, but he did not pursue an appeal to the third formal level of review. Id. at 930-31. Defendants filed a motion to dismiss, claiming that Brown had failed to exhaust his administrative remedies prior to filing suit. Id. at 931. Interpreting the Supreme Court's decision in Booth, the Ninth Circuit held that "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." Id. at 935. The court explained that the Department of Corrections failed to establish it had any remaining authority to act on Brown's complaint once it had ordered an investigation into the alleged assault. Id. at 937. In particular, the court noted that the response from the second level

1  of review reasonably suggested to plaintiff that no further relief would be available to him. That
2  response had characterized Brown's appeal as a "Staff Complaint," informed plaintiff that a
3  thorough investigation would ensue but that he would not be apprised of any disciplinary action
4  taken, and failed to counsel that any further review was available.[4] Id. at 937. The Ninth Circuit
5  explained that its interpretation that no further relief was "available" to plaintiff was supported
6  by the Department of Corrections' governing directives and procedures. For example, the
7  Administrative Bulletin of the Department of Corrections states that a complaint, such as
8  Brown's, alleging misconduct by a staff person shall be logged as a "Staff Complaint" and not as
9  an appeal. With respect to complaints regarding staff misconduct which included other appeal
10 issues (e.g., property loss), the inmate was to be notified that the other issues must be appealed
11 separately. Id. at 938. Similarly, the Department of Corrections Operations Manual explains that
12 the staff complaint procedure is intended to develop facts surrounding the alleged misconduct
13 and to keep the factual findings and the relief confidential. A complainant should only be
14 advised when appropriate action has been taken but should not be provided with specifics
15 relating to any personnel action. Id. The court concluded that "These directives, taken together,
16 /////

---

[4] The second level response to Brown stated in full:

> A thorough investigation will be conducted into your allegations and evaluated in accordance with Departmental Policies and Institutional Procedures. The matter has been referred to the Office of Internal Affairs. You shall be notified by the Office of Internal Affairs of the disposition of your complaint upon completion of the investigation, in accordance with [California Penal Code §] 832.7 and the Department Operations Manual section 31140.4.2. It is the Administration's responsibility to determine appropriate action taken against any employee, if deemed necessary. Additionally, inmates are not apprised of any disciplinary action that may have been taken against a staff member. It is beyond the scope of the appeals process to grant you monetary compensation.

Brown v. Valoff, 422 F.3d 926, 931 (9th Cir. 2005).

lead us to conclude that no further relief was in fact 'available' through the appeals process. . . ." Id.

In contrast, in this case, plaintiff had not received all "available" remedies at an intermediate level of review nor was he informed by prison officials that no further relief was available to him. In fact, the response from the second formal level of review stated: "You are advised that this issue may be submitted for a Director's Level of Review if desired." (O'Brian Decl., Ex. D.) Unlike the prisoner's "Staff Complaint" in Brown, plaintiff's claim regarding inadequate medical care was a typical grievance that proceeded through the Department of Corrections' three formal levels of review. Plaintiff's complaint was never classified or processed separately through a different complaint system.

Likewise, plaintiff's reliance upon the decisions in Brady v. Attygala, 196 F. Supp. 2d 1016 (C.D. Cal. 2002) and Gomez v. Winslow, 177 F. Supp. 2d 977 (N.D. Cal. 2001) is also misplaced. In Brady, the prisoner requested only to see an outside eye specialist. By the time the inmate's second level appeal had reached the Appeals Office, the inmate had already seen an ophthalmologist, so the appeals coordinator granted his appeal. Similarly, in Gomez, the prisoner had merely requested the necessary treatment for hepatitis C and information on how such treatment would affect his other medical conditions. During the time between the informal review and the first formal level of review, the prisoner had been offered the requested treatment. He appealed to the second level of review only because he was dissatisfied with the response of prison officials regarding the potential side effects of treatment. During the time between the first formal level of review and second formal level of review, the prisoner received the information he had requested in that regard. In fact, the inmate informed prison officials that his concerns had been addressed. Gomez, 177 F. Supp. 2d at 984. The courts in both Brady and Gomez determined that prison officials had offered and/or provided the prisoners with all of the relief they had requested, and therefore the prisoners were not required to proceed with additional appeals through the highest level of review prior to filing their complaints in federal court.

1    In contrast, here plaintiff's appeal was only partially granted at the first formal level of review.  The Appeals Office granted plaintiff another referral to see an orthopedics specialist.  Plaintiff saw a specialist the same day he filed his second level appeal asserting his dissatisfaction with the first level response.  Plaintiff's appeal was again only partially granted at the second level of review.  Unlike the situations in Brady and Gomez where the plaintiffs' requests had already been fully satisfied by the time they had reached the Appeals Office, here, plaintiff continued to express dissatisfaction with the medical care he was receiving and with the responses from prison officials.  Moreover, the Appeals Office continued to process plaintiff's appeals and partially grant further relief in response thereto.  In this case, the grievance process continued to offer plaintiff the "possibility of some relief for the action complained of."  Booth, 532 U.S. at 739. [5]

As noted above, defendants have the burden to raise and prove the affirmative defense of failure to exhaust administrative remedies.  See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1117-19 & nn.9 & 13.  Defendants Duc and Nangalama have carried their burden.  Under the circumstances set forth above, the court finds that plaintiff failed to properly exhaust his claim of inadequate medical care to completion before filing this action.  Therefore, the defendants' motion to dismiss should be granted.

---

[5] Plaintiff's case is more analogous to that presented to the court in Hazelton v. Alameida, 358 F. Supp. 2d 926 (C.D. Cal. 2005).  In that case an inmate alleged that prison officials were deliberately indifferent to his serious medical needs and had exposed him unnecessarily to hepatitis C.  358 F. Supp. 2d at 927.  He also alleged that officials failed to properly treat his disease and the complications he suffered.  Id. at 927.  Defendants moved to dismiss, claiming that plaintiff failed to exhaust his administrative remedies prior to filing suit.  Id. at 927.  The court held that plaintiff was precluded from bringing a § 1983 action because he had not exhausted his administrative remedies.  Id. at 935.  The court distinguished the decision in Gomez, noting that Hazelton's appeal was only partially granted at the first formal level of review when prison officials added plaintiff to a waiting list for an appointment with a specialist.  Id. at 934.  The court also noted that plaintiff had still not seen the specialist when he appealed to the second formal level of review, alleging that the response from the first formal level of review was inadequate.  Id. at 934.  The court concluded that, unlike the inmate in Gomez, Hazelton had not obtained all of the relief he had requested at the time he signed his requests for second level review, and it was possible that Hazelton could have obtained additional relief if he pursued his appeal to the director's level of review.  Id. at 934.

1       Accordingly, IT IS HEREBY RECOMMENDED that defendants Duc's and Nangalama's October 2, 2006 motion to dismiss be granted.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 5, 2007.

                                                       /s/ Dale A. Drozd
                                                      DALE A. DROZD
                                                      UNITED STATES MAGISTRATE JUDGE

DAD:9
hern1251.57