IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK A. HERNANDEZ,

    Plaintiff,       No. CIV S-06-1251 GEB DAD P

  vs.

VUONG M. DUC, et al.,       FINDINGS AND RECOMMENDATIONS

    Defendants.

_____/

    Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On April 13, 2007, the only remaining defendant in this action, Dr. Robert H. Allen, M.D., filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed a timely opposition.[1] Defendant Allen has not filed a reply.

/////

/////

---

[1] Plaintiff's opposition does not comply with Local Rule 56-260. Plaintiff did not reproduce and admit or deny each fact itemized in defendant's statement of undisputed facts. Nor did plaintiff present his own concise statement of disputed facts, as permitted, or the statement of undisputed facts required for a counter-motion for summary judgment. Nevertheless, in the interests of justice, the court has considered plaintiff's opposition.

1

## PLAINTIFF'S CLAIMS

Plaintiff alleges that in April 2005 he fractured his right ring finger while playing basketball. (Compl. at 3.) Plaintiff also alleges that defendant Allen, a orthopedic surgeon with U.C. Davis Medical Center, was deliberately indifferent to his medical needs. (Id.) In particular, plaintiff alleges that defendant Allen placed a splint and casting on his finger, but neither fixed his finger nor relieved his pain. (Id.) Plaintiff alleges that his finger had already healed in a deformed manner. (Id.) Plaintiff seeks compensatory damages, costs of the suit, and all other relief the court deems proper and just. (Id.)

## PROCEDURAL HISTORY

On June 7, 2007, plaintiff filed a civil rights complaint alleging that prison doctors and doctors at U.C. Davis Medical Center provided him with inadequate medical care. The undersigned determined that plaintiff's complaint appeared to state cognizable claims for relief against four defendants. In due course, the United States Marshal served plaintiff's complaint on Dr. Voung M. Duc, Dr. A. Nangalama, and Dr. Robert Allen. The court had also ordered service of plaintiff's complaint on defendant E. Trent. However, defendant Trent was never served because he could not be located.[2]

On October 2, 2006, CSP-Sacramento defendants Duc and Nangalama filed a motion to dismiss on the grounds that plaintiff failed to exhaust all available administrative remedies before filing suit. On August 30, 2007, the assigned district judge in this case adopted the undersigned's findings and recommendations which recommended that the motion to dismiss be granted. As a result, defendants Duc and Nangalama were dismissed from this action.

---

[2] On May 1, 2007, the court ordered plaintiff to provide additional information so that service on defendant Trent could be accomplished. On June 6, 2006, pursuant to Rule 15 of the Federal Rules of Civil Procedure, plaintiff submitted a motion for leave to file an amended complaint. Plaintiff claimed that he erred in naming Dr. E. Trent as a defendant in his original complaint. He further claimed that he should have named Dr. Erin Forest. On September 18, 2007, this court denied plaintiff's request without prejudice because it was not accompanied by a proposed amended complaint. (Order filed Sept. 18, 2007.)

On September 14, 2006, the only remaining defendant, Dr. Robert Allen with U.C. Davis Medical Center, filed an answer to the complaint. On October 16, 2006, the undersigned issued a discovery order. On April 13, 2007, defendant Allen filed the instant motion for summary judgment. On May 1, 2007, plaintiff filed a timely opposition.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

        In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

        In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On July 7, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## OTHER APPLICABLE LEGAL STANDARDS

I. Civil Rights Act Pursuant to 28 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

II. Eighth Amendment Medical Care Claim

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

/////

acted with deliberate indifference in allowing or causing the deprivation to occur.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. at 106.  An Eighth Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need."  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1991).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  <u>McGuckin</u>, 974 F.2d at 1059 (quoting <u>Estelle v. Gamble</u>, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities."  <u>Id.</u> at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference.  <u>Farmer</u>, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care.  <u>Hutchinson v. United States</u>, 838 F.2d 390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105-06).  Deliberate indifference is "a state of mind more blameworthy than negligence" and

/////

6

"requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Defendant's Statement of Undisputed Facts and Evidence

Defendant's statement of undisputed facts is supported by citations to plaintiff's complaint, plaintiff's U.C. Davis medical records, a declaration by defendant Robert H. Allen, and a declaration by defendant Allen's attorney, Robert F. Tyler.

The undersigned finds that defendant's evidence establishes the following facts: in April 2005, plaintiff injured his right ring finger while playing basketball. On December 21, 2005, CSP-Sacramento referred plaintiff to the U.C. Davis Medical Center where he was seen by Dr. Erin Forest at the U.C. Davis Medical Center Hand Clinic. Although defendant Allen's name is listed as the "provider" for the December 21, 2005 visit on some of plaintiff's medical records, Dr. Allen did not see plaintiff on that date because Dr. Forest was filling in for him.

During his December 21, 2005 visit, plaintiff informed Dr. Forest that he thought his finger was fractured, but he had tried to keep it quiet. Dr. Forest obtained x-rays of plaintiff's right ring finger, which she determined showed evidence of a healed distal articular proximal

phalanx fracture in adequate position. Dr. Forest informed plaintiff that he had a boutonniere deformity, encouraged him to work on passive range of motion exercises, prescribed serial casting to correct plaintiff's deformity, and scheduled him to follow-up with Dr. Allen.

Dr. Allen saw plaintiff for the first time on January 11, 2006, and examined his right ring finger. Dr. Allen's examination revealed a boutonniere deformity, passively correctable to approximately 25 degrees of flexion. Dr. Allen explained to plaintiff in detail that the best corrective procedure for the deformity was serial casting. In addition, Dr. Allen advised plaintiff that he needed to work on active flexion after the cylinder cast was placed over the primal interphalangeal joint. Finally, Dr. Allen recommended that the cast be replaced every two weeks until the deformity was gradually corrected. During this medical visit, plaintiff informed the nurse that his pain was a 5 out of 10, with 10 being the most painful. Plaintiff did not complain to Dr. Allen that he was in severe pain. Immediately after this visit, Marilyn Armbruster, O.T.R., C.H.T., placed a new cast on plaintiff's injured finger.

On January 25, 2006, plaintiff saw Armbruster again, and she replaced the cast on his finger as Dr. Allen had recommended. During this visit, plaintiff indicated that he was not suffering any pain in his finger.

On February 22, 2006, Dr. Allen saw plaintiff for a second time. At that time plaintiff indicated that he thought his boutonniere deformity was worse, which indicated to Dr. Allen that plaintiff had not been wearing his cast. After confirming that plaintiff's finger was five degrees worse in both his flexion posture and correctability, Dr. Allen advised plaintiff to perform flexion exercises, and again prescribed that the finger be serially cast as he progressed. During this visit, plaintiff again informed the nurse that he had no pain in his finger. Plaintiff also did not complain to Dr. Allen that he was in severe pain.

On March 20, 2006, Dr. Allen saw plaintiff for the third time. Plaintiff's boutonniere deformity had improved in that his finger was now passively correctable to 20 degrees of flexion and he now had good distal interphalangeal joint flexion. Dr. Allen once

again instructed plaintiff regarding the need to perform flexion exercises.  During the visit, plaintiff informed the nurse that he had no pain in his finger.  He also did not complain to Dr. Allen about pain.  After seeing Dr. Allen, plaintiff saw Armbruster again and she again put a new cast on his finger.

On April 14, 2006, plaintiff returned to see Dr. Allen for a fourth time.  At that time plaintiff' right ring finger was at about 30 degrees at a relaxed position, but with some effort, he could assume about a 20 degree flexion posture at the proximal interphalangeal joint.  The plan was to place plaintiff in a new, more extended, serial cast, provide him with a splint for dynamic extension at the proximal interphalangeal joint, and to have him return as needed.  During the visit, plaintiff informed the nurse that the pain in his finger was a 4 out of 10, with 10 being the most painful.  Plaintiff did not complain to Dr. Allen that he was in severe pain.

Dr. Allen's last contact with plaintiff took place in September 2006, approximately three months after plaintiff filed the instant action.  Given the status of this action and plaintiff's allegations that Dr. Allen had been deliberately indifferent in providing medical care to him, Dr. Allen advised plaintiff that he should find another physician.

In moving for summary judgment in favor of Dr. Allen, his counsel notes that plaintiff generally alleges that Dr. Allen's acts and omissions constituted deliberate indifference to plaintiff's medical needs.  Specifically, counsel states, plaintiff's claim is that application of a splint or casting was not the proper treatment for his finger or to relieve his severe pain since the finger had already healed in a deformed manner and that the proper treatment was surgical correction.  In response to that general allegation, counsel relies on Dr. Allen's declaration in contending that as a matter of law no Eighth Amendment violation occurred.

In this regard, Dr. Allen declares that he first saw plaintiff on January 11, 2006, at which time, plaintiff's finger fracture was at least eight months old and had already healed.  Accordingly, the optimal time for any possible surgical correction had long since passed.  According to Dr. Allen, a treatment plan calling for serial casting of the finger was the standard

9

and medically proper treatment for correcting the boutonniere deformity.  Serial casting was preferable over surgical correction because it would allow correction of the deformity whereas surgery would only create scar tissue that would further inhibit plaintiff's range of motion.  With serial casting, a patient like plaintiff can usually achieve a flexion arc within 20 degrees of normal, which is a medically acceptable result under the circumstances presented.

Dr. Allen declares that, unlike serial casting, surgical correction at the time plaintiff was first seen by him would have created additional scar tissue that would have further restricted plaintiff's range of motion in the affected finger.  Because of this, plaintiff's chance of reaching 20 degrees or better of full flexion with surgical correction would have been far less than that which he had with the serial casting treatment plan.

II.  Defendant Allen's Arguments

Based on this evidence, the defense argues that the medical care and treatment provided by Dr. Allen to plaintiff for his boutonniere deformity was in all respects within the applicable standard of care because the doctor provided a course of treatment for plaintiff's condition that he reasonably felt would provide plaintiff with the best outcome.  Defendant Allen acknowledges that deliberate indifference to the serious medical needs of a prisoner violates the Eighth Amendment's prohibition of cruel and unusual punishment. (Def.'s Mot. for Summ. J. at 5.)  However, defendant argues that plaintiff cannot raise a genuine issue of material fact as to whether he had a "serious medical need," or whether defendant acted with deliberate indifference towards his "serious medical need." (Id. at 8.)

Defendant contends that a determination of "deliberate indifference" involves an examination of (1) the seriousness of a prisoner's medical needs, and (2) the nature of the defendant's response to the prisoner's needs. (Def.'s Mot. for Summ. J. at 5.)  Under the first prong, defendant notes that the plaintiff must demonstrate a "serious medical need" by showing that failure to treat the condition could result in further significant injury or the unnecessary wanton infliction of pain. (Id.)  Under the second prong, plaintiff must show that defendant's

response to the need was deliberately indifferent. (Id.) This second prong, defendant contends, is satisfied only by showing (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (2) harm caused by the indifference. (Id. at 6.)

First, defendant Allen argues that plaintiff did not have a "serious medical need." (Id. at 6.) Specifically, defendant contends that the first time he saw plaintiff, plaintiff's right ring finger had healed, albeit in a deformed manner. (Id.) Because plaintiff's fracture had healed, defendant contends that no "further significant injury could result" even if he had failed to treat plaintiff. (Id.) Defendant also contends that plaintiff never complained to him that he was in severe pain. (Id.) In fact, plaintiff told the nurse on many of his visits that he had absolutely no pain. (Id.) At most, plaintiff intermittently experienced moderate pain associated with his injury. (Id.) Under these circumstances, defendant Allen contends that it cannot be said that a failure to treat plaintiff's condition would result in the "unnecessary and wanton" infliction of pain. (Id.)

Second, defendant Allen argues that he was not deliberately indifferent to plaintiff's medical needs. (Def.'s Mot. for Summ. J. at 6.) In this regard, defendant contends that he provided adequate care to plaintiff, and there is no evidence that he failed to properly respond to plaintiff's injury. (Id. at 7.) In fact, defendant Allen asserts that he provided a course of treatment that he reasonably felt would provide the best outcome for plaintiff and which in all respects was within the applicable standard of care. (Id.) Although plaintiff may have thought surgical intervention was required, he can produce no competent evidence demonstrating that the applicable standard of care required surgical correction. Further, even assuming plaintiff could produce such evidence, it would be insufficient to demonstrate defendant's deliberate indifference. (Id. at 7.)

Defendant Allen also argues that plaintiff cannot produce any evidence demonstrating that he was harmed by any alleged deliberate indifference to his medical needs. (Id. at 7.) In fact, defendant Allen's care and treatment improved plaintiff's condition and

relieved any pain plaintiff was experiencing.  Moreover, the facts demonstrate, to a reasonable probability, that plaintiff's finger would not have improved as much as it did had defendant Allen performed corrective surgery instead of serial casting.  (Id. at 8.)  Therefore, even if defendant Allen was deliberately indifferent by treating plaintiff's deformed finger with serial casting, plaintiff was not harmed by this course of treatment.

Defendant concludes that there are no genuine issues of material fact as to plaintiff's claim of deliberate indifference to his serious medical needs.  Accordingly, defendant Allen concludes that he is entitled to summary judgment in his favor.

III.  Plaintiff's Opposition

In opposition, plaintiff argues that defendant Allen is not entitled to summary judgment.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4.)  Plaintiff argues that he informed all of the doctors at U.C. Davis Medical Center that he was in pain and needed immediate surgical corrections.  (Id. at 2.)  Plaintiff notes that, when he first saw Dr. Forest who was filling in for Dr. Allen, she told him that if nothing changed with the recommended therapy, he should complain to medical personnel so that orthopedic surgeons could operate on his finger.  (Id. at 5.)  Plaintiff contends that this is exactly what he did.  (Id.)

Plaintiff contends that, when he returned to U.C. Davis, he had hoped to obtain surgical corrections to his broken finger.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 6.)  Plaintiff contends that he saw defendant Allen and informed him that he was in pain and needed surgical corrections.  (Id.)  Defendant Allen, however, acted with deliberate indifference by making a deliberate decision to withhold surgery.  (Id. at 6.)  Plaintiff contends that defendant Allen knew he was suffering from "unnecessary and wanton infliction of pain" and anxiety as a result of the injury.  (Id.)  Plaintiff also contends that defendant Allen knew that casting for an extended period of time would be futile since plaintiff's fractured finger had healed in a deformed way.  (Id.)  Finally, plaintiff contends that defendant Allen knew of plaintiff's pain and
/////

that although he repeatedly requested an operation, defendant Allen refused to provide the appropriate treatment. (Id. at 6-7.)

Plaintiff contends that he has demonstrated enough of a dispute as to the material issues of fact such that a rational trier of fact could find in his favor. Accordingly, plaintiff concludes defendant's motion for summary judgment should be denied.

**ANALYSIS**

The parties do not dispute that, over the course of four months, defendant Allen saw plaintiff four times with regard to the treatment of plaintiff's finger. At the first visit, defendant Allen concurred with Dr. Forest that serial casting was the most appropriate course of treatment for plaintiff's eight-month old injury. Defendant Allen explained the course of treatment to plaintiff and informed him of the importance of working on active flexion to correct his deformity. Defendant Allen also prescribed new serial casting for plaintiff's finger every two to three weeks.

The parties also do not dispute that, each time defendant Allen saw plaintiff, he examined plaintiff's finger and measured what progress, if any, had resulted from the treatment. Thus, on March 20, 2006, plaintiff's finger was found to be passively correctable to 20 degrees of flexion. Previously, the finger found to be passively correctable to 25 degrees of flexion. In this respect at least, plaintiff's finger deformity improved as a result of the medical treatment rendered by defendant Allen.

With respect to plaintiff's claim relating to the pain connected with his injury, plaintiff's medical records indicate that he informed the nurse during his first medical visit that the pain in his finger was a 5 out of 10, with 10 being the most painful. Plaintiff informed the nurse at the time of his fourth medical visit that the pain in his finger was a 4 out of 10, with 10 being the most painful. Moreover, plaintiff informed the nurse that he had no pain in his finger at the time of his second and third medical appointments. Plaintiff's own medical records thus

/////

establish that, at worst, plaintiff's pain was intermittent and moderate during the course of defendant Allen's treatment.

Based on this evidence, the undersigned finds that defendant Allen has borne his initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care he provided to plaintiff for his fractured finger. Thus, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact.

The court has considered plaintiff's opposition to the pending motion for summary judgement as well as his complaint. The undersigned finds that plaintiff has failed to submit any evidence establishing a legitimate dispute as to a genuine issue of material fact. Rather, plaintiff has only provided the court with unsupported and conclusory allegations. For example, plaintiff's allegation that defendant Allen knew he was suffering from "unnecessary and wanton infliction of pain" is unsupported. As noted above, plaintiff's medical records show that plaintiff himself reported that his pain was a 5 on a scale of 0-10, with 10 being the most painful. Plaintiff has not offered any additional evidence indicating that the pain he experienced was anything more than intermittent and moderate. Likewise, plaintiff's allegation that defendant Allen knew that treatment of his finger by placing it in a cast would be futile is unsupported. In fact, over the course of four months, plaintiff's range of motion in his finger improved by five degrees as a result of serial casting treatment plan followed by Dr. Allen. Even assuming, as plaintiff contends, that defendant Allen knew of plaintiff's repeated requests for surgical correction, determining a proper course of treatment is a matter of medical judgment. A medical decision that a condition is not best treated with surgery, without more, does not constitute cruel and unusual punishment.

As noted above, mere differences of opinion between a prisoner and prison medical staff as to the proper course of medical treatment does not give rise to liability under § 1983. See Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344. Rather, before it can be said that a prisoner's civil rights have been abridged with regard to

medical care, the indifference to his medical needs must be substantial because mere indifference, negligence, or medical malpractice will not support an Eighth Amendment claim of constitutionally inadequate medical care. See Estelle, 429 U.S. at 105-08. Here, plaintiff has failed to submit any evidence contradicting defendant Allen's medical opinion concerning the proper course of treatment for plaintiff's finger. Plaintiff has also failed to demonstrate a genuine dispute as to any issue of material fact with respect to his Eighth Amendment claim.

This court concludes that there is simply no evidence, not even a scintilla, that defendant Allen was deliberately indifferent to plaintiff's serious medical needs. Such indifference is an element essential to plaintiff's constitutional claim and plaintiff's complete failure of proof concerning the subjective element of his claims renders all other facts immaterial. Defendant Allen is therefore entitled to summary judgment in his favor with respect to plaintiff's Eighth Amendment claims.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendant Allen's April 13, 2007 motion for summary judgment be granted and that this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////
/////
/////
/////
/////

1 that failure to file objections within the specified time may waive the right to appeal the District
2 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: November 27, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
hern1251.57(2)